UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION
CASE NO. 09-21742

IN RE:

PAMELA M. TOLLIVER                                              DEBTOR


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PAMELA M. TOLLIVER                                              PLAINTIFF


## COMPLAINT AND OBJECTION
## TO SECURED CLAIM

ADVERSARY NO. 09-_____


BANK OF AMERICA, NATIONAL ASSOCIATION                 DEFENDANTS
AS SUCCESSOR BY MERGER TO LASALLE BANK
NATIONAL ASSOCIATION AS TRUSTEE FOR THE
CERTIFICATECHOLDERS OF THE MORTGAGE
PASSTHROUGH CERTIFICATES 1997-R3
c/o OCWEN LOAN SERVICING, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

          Serve also:     Hon Christopher M. Hill
                          Christopher M. Hill & Associates, P.S.C.
                          P.O. Box 817
                          Frankfort, KY 40602

                          Bank of America National Association
                          Serve President or Any Officer
                          101 South Tryon Street
                          Charlotte, NC 28280
                                    Serve by:     Kentucky Secretary of State
                                                  Summons Office
                                                  700 Capital Avenue, Suite 86
                                                  Frankfort, KY  40601

and

OCWEN LOAN SERVICING, LLC
c/o Bankruptcy Department
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Serve also:      Hon Christopher M. Hill
                 Christopher M. Hill & Associates, P.S.C.
                 P.O. Box 817
                 Frankfort, KY 40602

                 Ocwen Loan Servicing, LLC
                 c/o Corporation Service Company
                 421 West Main Street
                 Frankfort, KY 40601

**************************************************************************

## COMPLAINT OBJECTING TO SECURED CLAIM
## AND ASSERTING COUNTERCLAMS
## AND/OR CLAIMS FOR OFFSET, RECOUPMENT, ETC.

**************************************************************************

For her complaint and objection to the secured claim of Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3, and Ocwen Loan Servicing, LLC, Debtor and Plaintiff, Pamela M. Tolliver, states as follows:

### INTRODUCTORY STATEMENT

Plaintiff (Debtor in this Chapter 13 bankruptcy) brings this complaint to object to the claim filed in this case by Co-Defendants Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3, and Ocwen Loan Servicing, LLC.  Plaintiff asserts that the mortgage loan underlying Defendants' Proof of Claim has been paid in full and that Plaintiff has in fact overpaid amounts due under the mortgage

loan, and Defendants owe Plaintiff a refund of such amounts overpaid. Plaintiff further asserts that Defendants acted in concert to mislead and defraud Plaintiff and she seeks, without limitation, damages and/or offset or recoupment for state and federal statutory violations, fraud/intentional misrepresentation, conversion, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, breach of contract, and equitable claims.

## JURIDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 15 U.S.C. § 1692k(d). This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C) and (K).

## FACTUAL ALLEGATIONS

### I.      THE PARTIES

#### A.      Plaintiff, Pamela Tolliver

2.      Plaintiff, Pamela M. Tolliver (formerly married and known as Pamela Mulligan, hereafter "Ms. Tolliver"), is a resident of the state of Kentucky whose home-secured loan has been owned and serviced by Defendants at all relevant times covered by this action.

3.      Ms. Tolliver is a natural person who has lived at the subject property located at 154 Ward Avenue, in Bellevue, Kentucky, for the past thirty years. Ms. Tolliver resides at her home with her severely disabled teenage son who requires her full-time care.

4.      Plaintiff executed the 1981 Note and Mortgage herein at issue primarily for personal, family, or household purposes.

5.      Plaintiff was formerly married to Richard G. Mulligan, now deceased (Mr. Mulligan passed away on July 26, 2001).  Mr. Mulligan was co-signor on the 1981 Note and Mortgage.  As part of their divorce proceedings, Mr. Mulligan quit-claimed his interest in said property to Plaintiff on October 8, 1992.  The Quit Claim Deed was recorded with the Campbell County Clerk on September 8, 1999, at Book 619, Page 666.

**B.      Defendants, Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3, and Ocwen Loan Servicing, LLC**

6.      Defendant Bank of America, National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3 (hereafter "Bank of America") is the holder/owner of Plaintiff's mortgage loan.  Defendant Bank of America regularly conducts business in Kentucky, with its headquarters and principal place of business at 101 South Tryon Street, Charlotte, North Carolina, 20820.

7.      Defendant Ocwen Loan Servicing, LLC (hereafter "Ocwen") is the servicer of Plaintiff's mortgage loan.  Defendant Ocwen regularly conducts business in Kentucky, with its headquarters and principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409.

8.      On June 19, 2009, Defendants jointly filed a foreclosure complaint against Plaintiff, Ms. Tolliver, captioned "LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3 *c/o Ocwen Loan Servicing, LLC*".  (Emphasis added.)  Defendants' Complaint was filed in Campbell County Circuit Court, Civil Action No. 09-CI-00901.

9.      As basis for bringing this foreclosure, "Plaintiff, LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3," asserted that it was the current holder of the 1981 Note and Mortgage executed by Plaintiff and attached to the Complaint.   (Defendants' 2009 Complaint at Paragraphs 1 and 2.)

10.      Defendants also attached to their Complaint an exhibit captioned "Kentucky Assignment of Mortgage," entered into on October 25, 2004, evidencing the assignment of the 1981 Mortgage to "LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3 whose address is c/o Ocwen Federal Bank FSB 1675 Palm Beach Lakes Blvd., West Palm Beach, FL 33401 ("Assignee")."  (Defendants' 2009 Complaint at Exhibit C.)

11.      On July 28, 2009, subsequent to bringing their foreclosure action and in response to Plaintiff's Chapter 13 Plan, Defendant Ocwen filed an "Objection to Confirmation of Chapter 13 Plan" as "servicer for LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3." (Pacer Doc. No. 10 at 1-2.)

12.      On November 9, 2009, Defendants filed their Proof of Claim identifying the "Name of Creditor" for the first time as "*Bank of America, National Association as Successor by Merger to* LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3." (Emphasis added.)  The Proof of Claim states that notices and payments should be sent to "Ocwen Loan Servicing, LLC."  (Pacer Claim No. 14 at 1.)

13.     LaSalle Bank National Association was acquired by Bank of America Corporation on October 1, 2007, and assumed the Bank of America, National Association name on May 5, 2008.   Neither Defendants' 2009 Foreclosure Complaint nor their Objection to Confirmation of Chapter 13 Plan disclosed that as a result of that merger, Bank of America became Successor Trustee to LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3.

14.     Blackrock Capital Finance, L.L.C., is the issuer of "BCF L.L.C., Mortgage Pass-Through Certificates, Series 1997-R3," a privately offered Residential Mortgage-Backed Security.   Plaintiff's mortgage loan underlying Defendants' Proof of Claim (secured by the 1981 Note and Mortgage herein at issue) is part of the mortgage loan pool that is the collateral for this 1997-R3 securitization.

15.     Although the assignment transferring the 1981 Mortgage to Defendant Bank of America (f/k/a LaSalle Bank National Association) was executed on October 25, 2004, Defendants actually became the holder/owner and servicer of the 1981 Mortgage on or about December 17, 1997, when the 1997-R3 security was first issued and Defendant Bank of America (f/k/a LaSalle Bank National Association) became Trustee and Defendant Ocwen retained servicing rights.

16.     Defendant Bank of America is the fiduciary representing BCF L.L.C., Series 1997-R3 certificate holders.   Therefore, Defendant Bank of America is the holder/owner of Plaintiff's mortgage loan solely by virtue of its capacity as Trustee on behalf of the Trust and its investors.

17.     Defendant Ocwen is the "master servicer" of Plaintiff's mortgage loan. Pursuant to the "Pooling and Servicing Agreement" dated November 1, 1997 among BCF

L.L.C., Ocwen, and LaSalle National Bank as Trustee (including ABN AMRO Bank N.V. as fiscal agent), Ocwen oversees collection of monthly payments from Plaintiff, passing on required cash flows to Successor Trustee Bank of America to distribute amongst the Trust's investors.  Ocwen retains a set servicing fee from Plaintiff's monthly payments and is able to increase its profit margin by imposing and collecting fees from Plaintiff for late charges and other default-related fees.

18.    Defendants' Proof of Claim evidences that Defendants attempted to repossess Plaintiff's home based on an asserted outstanding principal balance of ***only*** $836.24.  (See Defendants' 2009 foreclosure Complaint and Defendants' Pacer Claim No. 14 at 2.)  (Plaintiff disputes both the amount and validity of Defendants' claim, as set forth below in this Complaint and Objection to Secured Claim.)

## II.    THE MORTGAGE LOAN DOCUMENTS UNDERLYING DEFENDANTS' CLAIM:  THE 1981 NOTE AND MORTGAGE

19.    The 1981 Note, the underlying basis of Defendants' claim, was originally made in the principal sum of $21,950.00, set at a fixed interest rate of 10.875%, and scheduled to be paid over 300 monthly installments of $213.17.  (See Pacer Claim No. 14 at 3.)

20.    The 1981 Mortgage secured the above Note.  (See Pacer Claim No. 14 at 6-10.)

21.    The 1981 Note and Mortgage do _no_t provide for recovery by the lender or holder of any costs and fees associated with default and foreclosure (including attorney's fees, court costs, property inspection or valuation fees, title report fees, bankruptcy fees, certified mail costs, etc.).  (See Pacer Claim No. 14 at 3-4 and 7.)

22.     The only costs and fees which the 1981 Mortgage permits the lender or holder to recover are late charges.  (See Pacer Claim No. 14 at 7, Paragraph 2(c).)

23.     Neither the 1981 Note nor the Mortgage provides that any accrued late charges may be paid from the mortgagor's monthly payment.

24.     The 1981 Mortgage expressly provides that each of the mortgagor's monthly payments shall "be applied by the mortgagee to the following items in the order set forth …".  The order for application of payments is:  (i) HUD premium charges, (ii) escrow for taxes and insurance, (iii) interest, and (iv) principal.  (See Pacer Claim No. 14 at 7, Paragraph 2(c).)

25.     Prior to this litigation, Defendants produced four Forbearance Agreements (hereafter "Agreements") allegedly executed by Plaintiff subsequent to the execution of the 1981 Note and Mortgage.  Defendants never attempted to enforce their rights under any of these alleged Agreements which have long ago expired.  The final Agreement dated December 5, 2005 superseded all other Agreements between Plaintiff and Defendants other than those set forth in the 1981 Note and Mortgage, and this alleged Agreement terminated October 1, 2006.

26.     Defendants never attempted to enforce any of these alleged Agreements in any previous foreclosure action brought against Plaintiff.  In both foreclosure suits Defendants relied solely upon the 1981 Note and Mortgage, which they affirmatively pled as the underlying basis for both foreclosure suits.

27.     Nor were these alleged Agreements relied upon for Defendants' Proof of Claim.  Paragraph 7 of Bankruptcy Form B10, "Proof of Claim," requires the creditor to "attach redacted copies of any documents that support the claim."  (See Pacer Claim No.

14 at 1.)  Defendants relied solely upon the 1981 Note and Mortgage by attaching only those documents as the underlying basis of the debt supporting their claim.

28.     None of these alleged Agreements alter the parties' rights and obligations specifically pertaining to costs and fees associated with default and foreclosure or the application of payments as set out under the 1981 Note and Mortgage herein at issue.

### III.     THE 2004 FORECLOSURE ACTION BROUGHT BY DEFENDANTS AGAINST PLAINTIFF

29.     On October 29, 2004, Defendants (under their former name "LaSalle Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R3 c/o Ocwen Federal Bank, FSB") filed a foreclosure action against Plaintiff, Ms. Tolliver, in Campbell County Circuit Court, Civil Action No. 04-CI-1308.

30.     The Complaint was based on the 1981 Note and Mortgage.  Defendants prayed for relief including attorney's fees and court costs, both of which were not authorized by the attached 1981 Note and Mortgage.

31.     According to the Court Record, on January 19, 2005, the presiding Judge sent a letter to then-counsel for Defendants regarding Defendants' failure to prosecute the case.  This letter stated that further failure to prosecute would result in the immediate dismissal of the case.

32.     With no further action taken by Defendants, as evidenced by the Court Record, on May 10, 2005 the Judge signed an Order of Dismissal.  This Order did _not_ provide that attorney's fees and costs should be awarded against Ms. Tolliver.

33.    On November 14, 2005, Defendants filed a Motion for Default Judgment *over six months after* the Order of Dismissal had disposed of the case.  This Motion also improperly requested attorney's fees and court costs.

34.    On December 2, 2005, Defendants filed a Motion to Vacate Dismissal and a Renewed Motion for Default Judgment, again requesting unauthorized attorney's fees and court costs.  The Circuit Court record shows that Defendants failed to appear at the December 22, 2005 hearing, so the motion was denied.

### IV.    THE 2009 FORECLOSURE ACTION BROUGHT BY DEFENDANTS AGAINST PLAINTIFF

35.    Ms. Tolliver encountered temporary financial difficulties in November 2008 when her bank account was 'frozen' pursuant to a garnishment notice issued by a judgment creditor.  The 'freeze' on Plaintiff's account was soon released by an Order from the Campbell District Court entered November 26, 2008.

36.    The November 2008 payment that Plaintiff attempted to make to Defendants was reversed because her Bank would not release the funds pursuant to the garnishment notice.  Plaintiff contacted Defendant Ocwen immediately and was told to make a double payment in December, and that doing so would allow her account to be held current.

37.    As soon as her bank released the freeze on her account, Plaintiff called Defendant Ocwen on December 3, 2008 and made a double payment in the amount of $798.11.

38.    On January 3, 2009, Plaintiff timely attempted to make her January payment, but Defendant Ocwen's representative refused to accept her payment unless

Plaintiff agreed to pay alleged accumulated fees and charges that were imposed by Defendants in breach of the 1981 Note and Mortgage.

39.     Plaintiff refused to pay the additional fees and charges.  After repeated attempts to work with Defendants to clarify or correct what she perceived to be errors in the servicing of her account proved futile, Plaintiff contacted a certified housing counselor at Brighton Center in Newport Kentucky, who also attempted to work with Defendants to no avail.

40.     For the next six months, Plaintiff tried to work with Defendants, and during this time she received numerous monthly billing statements, reinstatement notices, and pay-off statements.  All of these statements of notices and include attorney's fees and court costs improperly assessed against Plaintiff from the 2004 foreclosure suit that was dismissed, along with other improper default-related fees and charges.  None of these statements and notices were wholly consistent with one another nor are any consistent with Defendants' Proof of Claim.  These statements and notices demanded amounts that breached Defendants' obligations under the Mortgage and Note at issue.

41.     Without any legal basis, Defendants filed the foreclosure suit on June 19, 2009.  On or about this time, Defendants also incorrectly reported Plaintiff's account to the credit bureaus as past due and reported that foreclosure proceedings had commenced.

**V.      DEFENDANTS' LEDGER OF PLAINTIFF'S ACCOUNT HISTORY BEGINNING JANUARY 1, 1997 AND ENDING DECEMBER 8, 2008**

42.     Seeking to understand the charges Defendants said were owing, Plaintiff requested her account history from Defendants.  On January 2, 2009, Defendant Ocwen responded to Plaintiff via email attaching an account ledger entitled, "Loan #2778538,

Customer Name: Pamela Mulligan."  Defendants' ledger began accounting of Plaintiff's loan history on January 1, 1997 and ended on December 15, 2008.

43.     Defendants' ledger shows a beginning principal balance of $16,687.86 and an ending principal balance of $836.24.

44.     Defendants' ledger chronologically tallied and recorded Plaintiff's monthly payments, including any portions Defendants applied to escrow, interest, and principal, along with any disbursements made from escrow for the time period of January 1, 1997 through December 15, 2008.

45.     Defendants' ledger also chronologically tallied and recorded any late charges and other fees assessed by Defendants, and reported any amounts which Defendants held in 'suspense' (i.e., portions of Plaintiff's payments Defendants did not apply to pay down escrow, interest, or principal balances, as directed by the Mortgage) for the time period of January 1, 1997 through December 15, 2008.

46.     According to Defendants' ledger, late fees were assessed to Plaintiff's account for the time period of January 1, 1997 through December 15, 2008, as follows:

| DATE ASSESSED | AMOUNT |
|---------------|--------|
| 2/13/01 | $8.53 |
| 3/29/01 | $8.53 |
| 5/18/01 | $8.53 |
| 7/31/01 | $8.53 |
| 11/2/01 | $8.53 |
| 1/3/02 | $8.53 |
| 7/3/02 | $8.53 |
| 9/26/02 | $8.53 |

| 12/9/05 | $8.53 |
| No Date – Assessed for 11/1/08 | $4.26 |
| No Date – Assessed for 12/1/08 | $4.26 |
| **GRAND TOTAL** | **$85.29** |

47.    According to Defendants' ledger, other fees were assessed to Plaintiff's account for the time period of January 1, 1997 through December 15, 2008, as follows:

| FEE TYPE | DATE ASSESSED | AMOUNT |
| --- | --- | --- |
| **Property Valuation Expense** | 2/10/98 | $90.00 |
| | 8/1/05 | $378.00<br>*3 separate charges |
| | 10/31/05 | $252.00<br>*2 separate charges |
| | 6/27/06 | $126.00 |
| | | **TL = $720.00** |
| **Certified Mail Cost** | 8/1/05 | $29.86<br>*6 separate charges |
| | 12/8/08 | $5.32 |
| | 12/15/08 | $5.32 |
| | | **TL = $40.50** |
| **Foreclosure Costs/Expenses** | 8/1/05 | $3,142.00<br>*4 separate charges |
| | 12/30/05 | $425.00<br>*2 separate charges |
| | | **TL = $3,567.00** |
| **Bankruptcy Expenses/Fees** | 8/1/05 | $592.00<br>*2 separate charges |
| | | **TL = $592.00** |
| **Property Inspection Fees** | 8/1/05 | $10.50 |
| | | **TL = $10.50** |
| **Title Report Fee** | 8/1/05 | $350.00 |
| | | **TL = $350.00** |
| **Returned Check Fee** | 9/1/08 | $25.00 |

| | | TL = $25.00 |
|---|---|---|
| **GRAND TOTAL** | | **$5,431.00** |

48.     According to Defendants' ledger, portions of Plaintiff's mortgage payments were applied toward Defendants' recoupment of the above fees and charges on at least seven occasions, totaling $1,121.66.   The application of Plaintiff's payments toward the above fees and charges in the manner described above breached Defendants' obligations under the Note and Mortgage at issue.

49.     According to Defendants' ledger, portions of Plaintiff's mortgage payments were held in a "Suspense Balance" on at least fifty-two occasions, totaling $252.41.   As of December 15, 2008, according to Defendants' ledger, $61.84 of Plaintiff's payments were being held by Defendants and had not been applied to reduce any outstanding balances or returned to Plaintiff.  In fact, as of November 9, 2009, *nearly a year later*, according to Defendants' Proof of Claim, $61.84 of Plaintiff's payments continues to be held in suspense.   The application of Plaintiff's payments toward a suspense balance in this manner breached Defendants' obligations under the Note and Mortgage at issue.

50.     According to Defendants' ledger, portions of Plaintiff's mortgage payments were applied to something unknown to Plaintiff that Defendants' labeled "Optional Products" on at least eight occasions, totaling $87.36. The application of Plaintiff's payments toward purported Optional Products in this manner breached Defendants' obligations under the Note and Mortgage at issue.

51.     According to Defendants' ledger, portions of Plaintiff's mortgage payments were applied to something unknown to Plaintiff that Defendants' labeled an

"Interest Arrearage Balance" on at least seventeen occasions, totaling $1,457.93.  The application of Plaintiff's payments toward a purported Interest Arrearage Balance in this manner breached Defendants' obligations under the Note and Mortgage at issue.

52.    From January 1, 1997 through December 15, 2008, Defendants' ledger reflects Plaintiff's total payments made to Defendants equaled $43,765.24 and were applied as follows:

A.    $16,031.62 toward principal = outstanding balance $836.24

B.    $12,954.06 toward interest = outstanding balance $19.11

C.    $12,071.71 toward escrow = outstanding balance $0

D.    $1,457.93 toward interest arrearage = outstanding balance $0

E.    $1,270.86 toward fees, option products, and suspense

F.    $0.42 in 'non-applied' funds

G.    $21.36 'credit' for "prior payment shortage"

53.    According to Defendants' ledger the scheduled amortization for the remaining term of Plaintiff's loan, beginning January 1, 1997, resulted in 140 monthly installments of $213.13; with total interest paid of $12,971.69, total principal paid of $16,867.86, and total escrow paid of $12,071.71 – a sum total of $41,911.26.

54.    This scheduled amortization does not account for Plaintiff's 'unscheduled' additional payments of principal and the corresponding reduction in interest due, which would result in a total amount due of less than $41,911.26.

55.    However, Defendants' ledger reflects that Plaintiff's total payments made to Defendants equaled $43,765.24.

56.     As a result, Defendants have collected more from Plaintiff than she was obligated to pay under the Note and Mortgage at issue.

## VI.     DEFENDANTS' MONTHLY BILLING STATEMENTS OF PLAINTIFF'S ACCOUNT SINCE THIS BANKRUPTCY CASE WAS FILED

57.     On July 15, 2009, Ms. Tolliver filed her instant case under Chapter 13. Since the filing of her bankruptcy, Defendants have continued to mail Plaintiff monthly billing statements of her account that reflect Defendants have continued to impose previously assessed fees and charges in breach of Defendants' obligations under the 1981 Note and Mortgage.   Additionally, Defendants have imposed new fees and charges largely related to the bankruptcy also in contravention to the terms of the Note and Mortgage and despite the fact Plaintiff has paid the loan in full.

58.     Defendants' first post-petition monthly billing statement of Plaintiff's account was issued on July 17, 2009.  This billing statement detailed amounts due, and included previously assessed fees and charges in breach of Defendants' obligations under the Note and Mortgage at issue.  This statement also included additional late fees despite the fact the loan had been paid in full.

59.     Defendants' next monthly billing statement, dated August 17, 2009, continued to include the previously assessed fees and charges in breach of Defendants' obligations under the Note and Mortgage at issue.   This statement also included additional lis pendens fees (duplicative of previously assessed lis pendens fees), a fee of $300 for "Objection to Confirmation", and a fee of $150 for "Review of Plan/Notice of Appearance", all in breach of Defendants' obligations under the Note and Mortgage at issue.

60. Defendants' next monthly billing statement, dated September 17, 2009, included the same previously assessed fees and charges in breach of Defendants' obligations under the Note and Mortgage at issue, with no additional fees or charges.

61. Defendants' most recent monthly billing statement, dated October 19, 2009, again included all of the previously assessed fees and charges in breach of Defendants' obligations under the Note and Mortgage at issue. This statement also included an additional fee of $350 for "DIL Recording", and a fee of $70 for "Proof of Claim", both again in breach of Defendants' obligations under the Note and Mortgage at issue.

## COUNTERCLAIMS/CLAIMS FOR OFFSET, RECOUPMENT, ETC.

### COUNT ONE
### AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:
### VIOLATION OF KRS 360.010

62. Plaintiff incorporates all the factual allegations set forth above.

63. At all times relevant, the 1981 Note and Mortgage, the documents that are the basis of Defendants' claim, have been subject to the requirements of KRS 360.010 and 360.020.

64. Late charges were allowed in accordance with the 1981 Note and Mortgage, the loan documents which are the basis of Defendants' claim. However, _no_ other fees were authorized under the 1981 Note and Mortgage, including any of the default/foreclosure related fees (i.e., property valuation expenses, property inspection fees, title report fees, certified mail costs, foreclosure costs/expenses, bankruptcy fees/expenses, etc.,) which Defendants imposed against Plaintiff.   Consequently,

Defendants are permitted by contract only to collect valid late fees. Defendants are *not* permitted by contract or law to collect any other fee.

65.     The 1981 Note and Mortgage are governed by Kentucky law, which provides that attorney's fees may be enforceable when contractually authorized per KRS 411.195. But even if contractually allowed, attorney's fees must be reasonable in order to be enforced under KRS 411.195.

66.     Attorney's fees were *not* authorized in the 1981 Note and Mortgage, the documents that are the basis of Defendants' claim. Consequently, Defendants are *not* permitted to collect attorney's fees by contract or law.

67.     Between August 1, 2005 and December 30, 2005, Defendants charged Plaintiff approximately $5,190 in fees related to the October 29, 2004 foreclosure suit.

68.     Specifically, with relation to the 2004 foreclosure, Defendants unnecessarily assessed three separate charges of $126, totaling $378, for property valuation expenses on one single day, August 1, 2005. On October 31, 2005, Defendants again assessed two unnecessary charges of $126, totaling $252, for property valuation expenses on one single day. These systematic and duplicative overcharges for purported property valuation fees were intentionally assessed and are not bona fide, are in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

69.     Also, with regard to the 2004 foreclosure, Defendants assessed six separate charges, totaling $29.86, for certified mail costs on one single day, August 1, 2005. These systematic and duplicative overcharges for purported certified mail fees were intentionally assessed and are not bona fide, are in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

70.     Further, with regard to the 2004 foreclosure, Defendants' ledger shows that Defendants assessed approximately $3,567 of attorney's fees and court costs against Plaintiff ($3,142 on August 1, 2005 and $425 on December 30, 2005) *after* the foreclosure suit was dismissed by the Court on May 10, 2005 without granting Defendants' request for attorney's fees and costs.

71.     This amount itself is excessive in light of industry standards for attorney's fees and actual court filing costs.  Furthermore, this amount is illegitimate in light of the fact that Defendants' case was dismissed for failure to prosecute, and no attorney's fees or costs were granted to Defendants by the Court.  Moreover, these fees are unreasonable because the remaining scheduled amortization of Plaintiff's loan, in accordance with Defendants' ledger beginning January 1, 1997, required principal and interest payments totaling only $21,314 by October 2004.  However, Defendants' own ledger shows that Plaintiff had paid Defendants $21,325.48 of principal and interest between January 1, 1997 and October 29, 2004 – more than the amount due – as of the day the 2004 foreclosure suit was filed.  These attorney's fees and court costs were intentionally assessed and are not bona fide, are in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

72.     As of April 20, 2009, Defendants charged Plaintiff approximately $2,191 in fees related to the June 19, 2009 foreclosure suit, two months before the foreclosure was even filed.  These fees were likewise assessed in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

73.     Specifically, with relation to the 2009 foreclosure, Defendants assessed eight separate charges, totaling $40.50, for certified mail costs on one single day, April

20, 2009.  These systematic and duplicative overcharges for purported certified mail fees were intentionally assessed and are not bona fide, are in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

74.    Further, with regard to the 2009 foreclosure, Defendants assessed approximately $1,797.91 of attorney's fees and court costs against Plaintiff on April 20, 2009.  This amount itself is unreasonable and excessive in light of industry standards for attorney's fees and actual court filing costs, particularly since the foreclosure suit had not yet even been filed.  These attorney's fees and court costs were intentionally assessed and are not bona fide, are in violation of the terms of the Note and Mortgage at issue, and are not otherwise permitted by law.

75.    Moreover, despite these fees being unauthorized and not bona fide, _all_ the fees associated with the 2009 foreclosure are likewise illegitimate because the remaining scheduled amortization of Plaintiff's loan, in accordance with Defendants' ledger beginning January 1, 1997, required principal and interest payments totaling only $29,839.55.  However, Defendants' own ledger shows that Plaintiff had paid Defendants $31,693.53 of principal and interest between January 1, 1997 and December 3, 2008 – _more than the entire amount due under the 1981 Note and Mortgage_ – six months before the foreclosure suit was filed.

76.    Until July 15, 2009, when Plaintiff filed her instant case under Chapter 13, Plaintiff had never before filed a bankruptcy.

77.    In violation of the Note and Mortgage, and despite the fact that Plaintiff had _never_ filed a bankruptcy, Defendants systematically charged illegitimate bankruptcy fees to Plaintiff both as part of the 2004 _and_ 2009 foreclosure actions.  Defendants

assessed such bankruptcy fees to Plaintiff's account on August 1, 2005 totaling $592, and

on April 2, 2009 totaling $352.59.

78.     Defendants' bankruptcy fees described above were intentionally assessed

and are not bona fide, and are in violation of the terms of the Note and Mortgage at issue,

and are not otherwise permitted by law.

79.     Since the filing of her Chapter 13 on July 15, 2009, Defendants have

assessed bankruptcy-related fees of at least $870.   These bankruptcy fees were

intentionally assessed and are not bona fide, are in violation of the terms of the Note and

Mortgage at issue, and are not otherwise permitted by law.   Further, these fees are

likewise illegitimate because they were charged to Plaintiff after she had paid the loan in

full.

80.     The 1981 Note and Mortgage, the documents that are the basis of

Defendants' claim, explicitly set forth how mortgagor's payments shall be applied – first

to premium charges to HUD, second to escrow, third to interest, and fourth to principal.

81.     Thus, the 1981 Note and Mortgage expressly required Defendants to apply

Plaintiff's payments *only* to reduce outstanding escrow, interest, and principal balances,

and Defendants should have returned any excess amounts to Plaintiff.

82.     Nowhere did the 1981 Note or Mortgage allow Defendants to divert *any*

amounts of Plaintiff's payments to any fees, option products, interest arrearage advances,

or to any suspense account – even if such were authorized and bona fide.

83.     Nowhere did the 1981 Note or Mortgage allow Defendants to divert *any*

amounts of Plaintiff's payments to valid late charges authorized under the 1981 Note and

Mortgage. Defendants could only collect valid late fees after the loan was fully paid, or by assessing such fees separately.

84.     In breach of the 1981 Note and Mortgage, Defendants systematically and intentionally misapplied $1,270.86 toward default-related fees, option products, and suspense, and $1,457.93 toward an interest arrearage.

85.     Not only were Defendants' fees and charges not authorized by contract or law and not bona fide; Defendants were not authorized by contract or law to divert Plaintiff's payments to recover any such fees or charges, or to a suspense account.

86.     The 1981 Note and Mortgage scheduled interest to be charged monthly on the actual unpaid principal balance. Defendants' intentional diversion of Plaintiff's payments to improper fees and charges, optional products, interest arrearages, and to a suspense account, instead of applying Plaintiff's payments to pay down her principal balance in accordance with the Note and Mortgage, caused Plaintiff to pay interest on an artificially inflated principal balance and therefore Defendants were able to collect more interest than actually due.

87.     KRS 360.010 precludes Defendants from charging more interest than that agreed between the parties' in the Note and Mortgage.

88.     KRS 360.020 mandates that that the "taking, receiving, reserving, or charging a rate of interest greater than is allowed by KRS 360.010, when knowingly done, shall be deemed a forfeiture of interest which the note, bill, or other evidence of debt carries with it …".

89.     As described above, at all times relevant, Defendants have knowingly charged Plaintiff's account with improper fees and charges that were not agreed to in the

parties' written agreements and that were charged for her continued use of the loan proceeds. Such charges constitute "interest" within the meaning of Kentucky law.

90.     As described above, at all times relevant Defendants have knowingly charged Plaintiff's with a greater rate of interest than allowed by KRS 360.010 by failing to apply payments to reduce Plaintiff's unpaid principal balance and calculate interest on the actual unpaid principal balance in the manner prescribed by the Note and Mortgage.

91.     Instead, Defendants systematically diverted Plaintiff's payments to lender service fees, optional products, interest arrearages, and to an unauthorized suspense account instead of applying such payments to reduce Plaintiff's unpaid principal balance and thereby decreasing her interest next due and owing.

92.     At all times relevant Defendants profited from these systematic procedures of diverting Plaintiff's payments to collect improper fees and failing to reduce Plaintiff's unpaid principal balance resulting in the collection of interest in amounts in excess of that allowed by KRS 360.010.

93.     Because Defendants' claim for and collection of interest as set out above violates KRS 360.010, such violation mandates the forfeiture by Defendants of all interest under the Note pursuant to KRS 360.020.

94.     As Plaintiff has paid a greater rate of interest than agreed between the parties, she is entitled to recover twice the amount of such interest paid to Defendants pursuant to KRS 360.020.

**COUNT TWO**
**AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:**
**VIOLATION OF KENTUCKY'S CONSUMER PROTECTION ACT**

95.     Plaintiff incorporates all the factual allegations set forth above.

96.     At all times relevant, Defendants' actions were subject to Kentucky's Consumer Protection Act, KRS 367.110 *et. seq.*.  Defendants are "persons" as defined by KRS 367.110(1) and were engaged in "trade" or "commerce" as defined by KRS 367.110(2) by offering for purchase credit servicing.

97.     At all times relevant, in the servicing of Plaintiff's loan, Defendants engaged in unfair, false, misleading and/or deceptive acts or practices in violation of KRS 367.170, by actions including but not limited to:  (i) attempting to maximize their profits with the goal of putting Plaintiff's account in default so it could then charge Plaintiff additional default-related fees; (ii) engaging in a scheme and course of conduct to inflate their corporate profits by collecting various fees from Plaintiff that were not authorized by the loan documents or applicable law; and (iii) misapplying Plaintiff's payments contrary to the terms of the Note and Mortgage and collecting a greater amount of interest than agreed between the parties.

98.     These improper fees and charges described herein have had a snowball effect, artificially forcing Plaintiff into default status and foreclosure; resulting in further improper and unauthorized fees and charges.

99.     Defendants demanded payment of these improper fees in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and calls.

100.    These demands for payment were structured in a way that made it extremely difficult for Plaintiff to determine how much she owed, or how her payments were allocated.  When Plaintiff attempted to call for clarification, Defendants routinely refused to correct problems.

101.    Defendants then profited from the collection of improper fees from Plaintiff's monthly payments.  Defendants also profited by collecting more interest than due under the terms of the Note and Mortgage.  Defendants further attempted to recover proceeds by foreclosing on Plaintiff's home.

102.    Defendants carried out this scheme by ignoring Plaintiff's loan documents and employing deceptive accounting mechanisms as described above.

103.    Defendants have knowingly put Plaintiff's homeownership at risk by failing to perform under the terms of the 1981 Note and Mortgage at issue.

104.    Defendant Ocwen's actions, as described *infra* in paragraphs 142 - 146, violate the Fair Debt Collection Practices Act prohibitions and constitute unfair, false, misleading or deceptive acts or practices within the meaning of KRS 367.170.

105.    As a direct and proximate cause of Defendants' conduct as described herein, Plaintiff has suffered monetary damages, including overpayment of the debt owed to Defendants, defending against two wrongful foreclosure actions, and impairment of her credit.  Further, Plaintiff has been in jeopardy of losing her home since approximately October of 2004, and has suffered associated emotional stress, anxiety, depression, loss of sleep, fear and uncertainty about her and her disabled son's future.  The total amount of compensatory damages will be determined by the evidence at trial.

106.    Defendants' actions pleaded herein were intentional or reckless, outrageous, and intolerably offensive to generally accepted standards of decency and morality, entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

107.    By such intentional, unfair, unconscionable or deceptive acts and practices, all in violation of Kentucky's Consumer Protection Act, Defendants are liable to Plaintiff for actual, compensatory, and punitive damages, as well as attorney's fees and costs.

**COUNT THREE**
**AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:**
**FRAUD / INTENTIONAL MISREPRESENTATION**

108.    Plaintiff repeats and realleges each paragraph set forth above as if fully set forth herein.

109.    As described above, at all times relevant without limitation, Defendants have wrongfully and intentionally misrepresented the assessments it was permitted to charge Plaintiff and misrepresented the status and amount of the debt.   Defendants conditioned reinstatement upon such false representations.  Defendants did this with the intent and knowledge that Plaintiff would reasonably rely upon those representations.

110.    Plaintiff reasonably relied on Defendants' material misrepresentations to her detriment.

111.    At all times relevant, Defendants were aware that their conduct of misrepresenting the status of her debt and by improperly diverting Plaintiff's payments to pay their own fees and holding her payments in suspense versus reducing her escrow, interest, and principal balance, would potentially result in foreclosure and Plaintiff's homelessness.

112.    As a direct and proximate cause of Defendants' conduct as described herein, Plaintiff has suffered monetary damages, including overpayment of the debt owed to Defendants, defending against two wrongful foreclosure actions, and impairment of

her credit.  Further, Plaintiff has been in jeopardy of losing her home since approximately October of 2004, and has suffered associated emotional stress, anxiety, depression, loss of sleep, fear and uncertainty about her and her disabled son's future.  The total amount of compensatory damages will be determined by the evidence at trial.

113.    Defendants' actions pleaded herein were intentional or reckless, outrageous, and intolerably offensive to generally accepted standards of decency and morality, entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

**COUNT FOUR**
**AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:**
**CONVERSION**

114.    Plaintiff repeats and realleges each paragraph set forth above as if fully set forth herein.

115.    As described above, at all times relevant without limitation, Defendants have wrongfully and intentionally misapplied Plaintiff's payments and diverted them to unauthorized and non-bona fide fees, including the systematic charge of bankruptcy fees and expenses, foreclosure fees and costs, property valuation and inspection fees, certified mail fees, title report fees, etc., instead of properly applying them to her escrow account and to reduce her principal and interest, as required by the Mortgage.

116.    In addition, Defendants have wrongfully and intentionally misapplied Plaintiff's payments and diverted them to an unauthorized suspense account instead of properly applying them to her escrow account and to reduce her principal and interest, as directed by the Mortgage.

117.    Defendants exercised dominion and control of Plaintiff's payments and Defendants' conduct amounts to a wrongful taking of Plaintiff's personal property.

118.    At all times relevant, Defendants were aware that their conduct of taking Plaintiff's personal property, by improperly diverting Plaintiff's payments to pay their own improperly assessed fees and holding Plaintiff's payments in suspense – instead of reducing her escrow, interest, and principal balance as directed by the Mortgage – could potentially result in foreclosure and Plaintiff's homelessness.

119.    As a direct and proximate cause of Defendants' conduct as described herein, Plaintiff has suffered monetary damages, including overpayment of the debt owed to Defendants, defending against two wrongful foreclosure actions, and impairment of her credit.  Further, Plaintiff has been in jeopardy of losing her home since approximately October of 2004, and has suffered associated emotional stress, anxiety, depression, loss of sleep, fear and uncertainty about her and her disabled son's future.  The total amount of compensatory damages will be determined by the evidence at trial.

120.    Defendants' actions pleaded herein were intentional or reckless, outrageous, and intolerably offensive to generally accepted standards of decency and morality, entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

## COUNT FIVE
## AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:
## BREACH OF IMPLIED COVENANT OF GOOD FAITH

121.    Plaintiff repeats and realleges each paragraph set forth above as if fully set forth herein.

122.    An implied covenant of good faith and fair dealing governs the performance of all contracts entered into under Kentucky law, including the 1981 Note and Mortgage, and neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

123.    Defendants breached their duty and acting in bad faith by actions which include but are not limited to:  (i) knowingly failing to apply payments in the manner prescribed by the Note and Mortgage, (ii) knowingly charging fees that were not agreed to in the Note and Mortgage and were not allowed by contract or law or otherwise bona fide; (iii) attempting to maximize their profits with the goal of putting Plaintiff's account in default so it could then charge Plaintiff additional default-related fees; (iv) knowingly making demands for payment were structured in a way that made it extremely difficult for Plaintiff to determine how much she owed, or how her payments were allocated; (v) refusal to work with Plaintiff to correct errors and accept payment when loan not in default in January of 2009; (vi) by attempting to profit from collecting more interest than due under the terms of the Note and Mortgage; (vii) by attempting to profit from lucrative illegitimate fees and instigating unfair foreclosure proceedings when Plaintiff had paid in full her scheduled principal and interest due in October of 2004, and (viii) by attempting to profit from lucrative illegitimate fees and bringing a foreclosure suit on June 19, 2009 when loan was paid in full by December 3, 2008.

124.    As a direct and proximate cause of Defendants' conduct as described herein, Plaintiff has suffered monetary damages, including overpayment of the debt owed to Defendants, defending against two wrongful foreclosure actions, and impairment of her credit.  Further, Plaintiff has been in jeopardy of losing her home since approximately

October of 2004, and has suffered associated emotional stress, anxiety, depression, loss of sleep, fear and uncertainty about her and her disabled son's future. The total amount of compensatory damages will be determined by the evidence at trial.

125.    Defendants' actions pleaded herein were intentional or reckless, outrageous, and intolerably offensive to generally accepted standards of decency and morality, entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

**COUNT SIX**
**AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:**
**NEGLIGENT MISREPRESENTATION**

126.    Plaintiff repeats and realleges each paragraph set forth above as if fully set forth herein.

127.    At all times relevant, without limitation, Defendants supplied false information and/or failed to disclose information and failed to use reasonable care in communicating information to Plaintiff regarding the servicing of her account.

128.    Plaintiff reasonably relied upon Defendants' communication of such false information. Based upon those false representations and/or omissions, Plaintiff did in fact overpay her obligation under the Note and Mortgage.

129.    By the actions pleaded herein, Defendants have caused Plaintiff to be subject to unfair default fees and related charges as well unfair attorney's fees to her mortgage account, two wrongful foreclosure actions and related expenses, expenditures of time and resources, and has injured Plaintiff's credit.

130.    Plaintiff is therefore entitled to damages measured by the amounts Plaintiff has overpaid Defendants. Defendants are further liable to Plaintiff for the

consequential damages which arose out of Defendants' wrongful actions, subjecting

Plaintiff to costs and out of pocket expenses to be determined by the evidence at trial.

### COUNT SEVEN
### AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:
### BREACH OF CONTRACT

131.    Plaintiff repeats and realleges each paragraph set forth above as if fully set

forth herein.

132.    The 1981 Note and Mortgage, the documents which are the basis of

Defendants' claim, are contracts consummated in Kentucky.

133.    At all times relevant, without limitation, Defendants breached the terms

and conditions of the 1981 Note and Mortgage by actions described above which include

but are not limited to:  (i) failure to apply payments in the manner prescribed by the Note

and Mortgage resulting in the failure to reduce Plaintiff's principal balance and

Defendants' collection of interest in excess of the parties' agreement; and (ii) charging

fees that were not agreed to in the Note and Mortgage and were not allowed by law and

that were not bona fide charges; and (iii) instituting foreclosure proceedings in violation

of the terms of the Note and Mortgage.

134.    By the actions pleaded herein, Defendants have caused Plaintiff to be

subject to unfair default fees and charges as well unfair attorney's fees to her mortgage

account, two wrongful foreclosure actions and related expenses, expenditures of time and

resources, and has injured Plaintiff's credit.

135.    Plaintiff is therefore entitled to damages measured by the amounts

Plaintiff has overpaid Defendants.   Defendants are further liable to Plaintiff for the

consequential damages which arose out of Defendants' wrongful actions, subjecting

Plaintiff to costs and out of pocket expenses to be determined by the evidence at trial.

## COUNT EIGHT
## AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN:
## EQUITY ABHORS A FORFEITURE

136.    Plaintiff repeats and realleges each paragraph set forth above as if fully set

forth herein.

137.    Defendants have brought a foreclosure action against Plaintiff based upon

their claim that she owes ***only*** $836.24 in outstanding principal on her original obligation

of $21,950.00.

138.    Defendants have repeatedly refused to work with Plaintiff and her housing

counselor to resolve the issue of her alleged outstanding debt and instead wrongfully filed

the foreclosure suit against her.

139.    Defendants have had the ability to enforce their alleged right to repayment

of the debt through means other than the forfeiture of Plaintiff's home.

140.    However, in order to ensure recovery of their exorbitant and illegal fees,

Defendants have opted to raid Plaintiff's substantial equity in her home, which Defendant

Bank of America values within the range of $95,960 - $122,616.

(See http://bankofamerica.cyberhomes.com/homes-bellevue-ky-41073/154wardave/61791541.aspx.)

141.    Plaintiff is therefore entitled to appropriate equitable relief and such other

relief as the Court deems equitable and just, including restitution of reasonable attorney's

fees and the for costs of this litigation.

## COUNT NINE
## AGAINST DEFENDANT OCWEN:
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15
## U.S.C. § 1692 *et seq.* ("FDCPA")

142.    Defendant Ocwen's own ledger shows that it began servicing Plaintiff's mortgage loan at a time when the loan was in default.

143.    Defendant Ocwen does not fall within the exemption for servicers not assuming servicing of a loan while in default at 15 U.S.C. § 1692a(6)(f)(iii), and therefore Defendant Ocwen is subject to the prohibitions of the FDCPA.

144.    As described above, Defendant Ocwen violated the FDCPA, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. Defendant's violations include, but are not limited to, the following: (i) misrepresenting the character, amount or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A); (ii) misrepresenting the services rendered or compensation which may be lawfully received in connection with the collection of the debt in violation of 15 U.S.C. § 1692e(2)(B); (iii) threatening to take action that cannot be legally taken in violation of § 1692e(5); (iv) generally utilizing false and deceptive means to collect or attempt to collect a debt in violation of § 1692e(10); (v) engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in violation of § 1692d; and (vi) attempting to collect an amount in excess of what is lawfully owed in violation of § 1692f(1).

145.    As a result of the above violations of the FDCPA, Plaintiff has suffered substantial actual damages including but not limited to her loss of money, emotional and mental pain and suffering, humiliation, and embarrassment.

146.    Plaintiff is therefore entitled to a declaratory judgment that Defendant Ocwen's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

## COUNT TEN
### AGAINST DEFENDANTS BANK OF AMERICA AND OCWEN: OBJECTION TO PROOF OF CLAIM

147.    Plaintiff incorporates by reference each and every allegation set forth above,

148.    Plaintiff has already provided payment to Defendants of an amount which exceeds that called for in the Note and Mortgage, as established by Defendants' own supporting documents.

149.    Further, Defendants' Proof of Claim is facially defective as it contains: (i) unsubstantiated charges and fees which are not itemized pursuant to the instructions contained on Official Form 10; (ii) no authority for the amount or validity of these fees and charges; and (iii) no evidence that these fees and charges are secured by the Note and Mortgage.  Furthermore, these charges and fees are otherwise not bona fide for reasons stated herein.  And even if Defendants' had an entitlement to the amount prayed for in their Proof of Claim, that amount would be more than offset by Defendants' liability to Plaintiff pursuant to the above-listed causes of action.

150.    Therefore, Plaintiff asks for an Order disallowing Defendants' Proof of Claim, and requiring Defendants to release their mortgage on Plaintiff's home.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff Ms. Tolliver requests that the Court grant her the following relief against Defendants Bank of America and/or Ocwen:

1.    A Declaration that Defendants' actions constitute fraud / intentional misrepresentation, conversion, breach of good faith and fair dealing, negligent misrepresentation, and breach of contract;

2.    A Declaration that Defendants' actions violate KRS 360.010;

3.    A Declaration that Defendants' actions violate KRS 367.170;

4.    A Declaration that Defendant Ocwen's actions violate the FDCPA;

5.    A Declaration that Defendants' mortgage on Plaintiff's home has been satisfied, and Order disallowing Defendants' Proof of Claim and requiring Defendants to release their lien;

6.    Award actual, compensatory, and punitive damages and/or offset, or in the form of recoupment to diminish or extinguish Defendants' monetary demands;

7.    Award actual, compensatory, and punitive damages and/or offset, or in the form of recoupment to diminish or extinguish Defendants' monetary demands, as well as attorney's fees and costs pursuant to KRS 367.220;

8.    Award damages under KRS 360.020, including that all interest on the Note is forfeited and awarding damages in the amount of twice the amount of interest that Plaintiff has paid;

9.    Award statutory damages and/or offset or recoupment pursuant to 15 U.S.C. § 1692k, as well as attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a);

10.   Grant appropriate equitable relief, including restitution of reasonable attorney's fees and for the costs of this litigation;

11.    Grant any other relief to which Plaintiff may be entitled; and

12.    Grant all such other and further relief as the Court deems just.

Respectfully Submitted,

/s/ J. Eileen Zell
J. EILEEN ZELL (#90398)
/s/ James P. McHugh (#85090)
JAMES P. MCHUGH
ATTORNEYS FOR PLAINTIFF
Legal Aid of the Bluegrass
104 East 7th Street
Covington, Kentucky 41011
Ph: 859-431-8200 ext 1221

/s/ Michael O'Hara
MICHAEL O'HARA (#52530)
ATTORNEY FOR PLAINTIFF
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Crestview Hills Mall Road, Suite 201
Covington, Kentucky 41017-0411
Ph: 859-331-2000