UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

PAMELA M. TOLLIVER                                    CASE NO. 09-21742

DEBTOR

PAMELA M. TOLLIVER                                              PLAINTIFF

VS:                                                                ADV. NO. 09-2076

BANK OF AMERICA, ET AL                                    DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SANCTIONS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I.    INTRODUCTION

Plaintiff, Pamela M. Tolliver, filed her Complaint and Objection to Secured Claim (PACER Docket # 1) asserting various claims against Defendants relating to their servicing of Plaintiff's mortgage loan and their Proof of Claim (PACER Claim # 14). Plaintiff contends that Defendants intentionally: (i) charged improper, unreasonable, excessive, and non-bona fide fees to Plaintiff's account; (ii) demanded payment of such fees; and (iii) collected payment of such fees from Plaintiff, including the collection of additional interest beyond that allowed under the underlying Note and Mortgage.  Plaintiff further contends that she has in fact overpaid amounts due and owing on her mortgage loan.

1

Plaintiff claims that Defendants violated state law by charging more interest than that agreed between the parties' (KRS 360.010); violated Kentucky's Consumer Protection Act (KRS 367.110 *et seq.*); committed acts of fraud/intentional misrepresentation, conversion, breach of the implied covenant of good faith, negligent misrepresentation, breach of contract; and violated the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*).  Plaintiff also objects to Defendants' Proof of Claim.

Nearly 140 days after Plaintiff served written discovery upon the Defendants, and after Plaintiff's repeated and exhaustive attempts to obtain Defendants' responses, Defendants have failed to produce documents directly relating to Defendants' Proof of Claim and Plaintiff's claims against Defendants.  Moreover, Defendants have failed to produce documents that are necessary to challenge defenses asserted by them.  See Defendants' Amended Response to Plaintiff's First Set of Interrogatories attached at Exhibit A, and Defendants' Amended Response to Plaintiff's First Request for Production of Documents attached at Exhibit B.[1]

Plaintiff now moves for appropriate sanctions based upon Defendants' failure to produce properly requested discovery, failure to comply with the Agreed Order entered by this Court (PACER Docket # 22), failure to comply with the Federal Rules requiring Defendants to disclose or supplement information or witnesses, and Defendants' spoliation of documents.

---

[1]     Despite Plaintiff putting Defendants on notice on several occasions, Defendants' initial and supplemental discovery responses lack signed objections from Defendants' counsel as required by Rule 33(b)(5).

II.     STATEMENT OF FACTS

Plaintiff and her former husband, now deceased, executed the 1981 Note herein

at issue with a local bank together with the 1981 Mortgage which designated her home

at 154 Ward Avenue, in Bellevue, Kentucky, as collateral.  Plaintiff's mortgage loan was

later assigned to the Department of Housing and Urban Development ("HUD") as part of

its Assignment Program.   See 24 C.F.R. § 203.651 (since repealed).   Under the

Assignment Program, HUD accepted assignment of insured mortgages and provided

temporary forbearance (for up to 36 months) and other relief to allow homeowners facing

foreclosure, such as Plaintiff, the opportunity to regain financial footing.  In 1995, as a

cost cutting measure, HUD began divesting itself of the mortgage loans acquired through

the HUD Assignment Program and sold its loan portfolio in a series of auctions between

1995 and 1997.  See 62 F.R. 3766-01 (Jan. 24, 1997).  Each mortgage loan sold during

this period is governed under a Mortgage Loan Sale Agreement between HUD and the

purchaser.   Purchasers of these loans and their servicers must follow all servicing

requirements set forth in the Loan Sale Agreement which has important protective

provisions for the affected homeowners. See 24 C.F.R. § 291.307(b).

Defendants purchased Plaintiff's loan from HUD as part of one of these sales on

or about January of 1997, and began servicing Plaintiff's account.  On or about this same

time, Defendants, along with Blackrock Capital Finance, L.L.C., created a trust made up

of a pool of loans of which Plaintiff's was a part – all delinquent mortgage loans assigned

to HUD through the Assignment Program – and offered the resulting residential

mortgage-backed security ("BCF L.L.C., Mortgage Pass-Through Certificates, Series

3

1997-R3") to investors in a private sale.  See PACER Docket # 1 at 6, ¶ 14.  Defendant

Bank of America, National Association as Successor by Merger to LaSalle Bank National

Association as Trustee for the Certificateholders of the Mortgage Passthrough

Certificates 1997-R3, is the holder/owner of Plaintiff's mortgage loan solely by virtue of

its capacity as Trustee on behalf of the trust and its investors, and Defendant Ocwen

Loan Servicing L.L.C., is the master servicer of Plaintiff's mortgage loan.  See PACER

Docket # 1 at 6, ¶ 16 and 17.

At the time Defendants purchased and began servicing Plaintiff's loan in January

of 1997, Defendants assert that there was an outstanding principal balance of

$16,867.86, an "interest arrearage balance" of $2,915.86, and accrued late fees of

$352.68.   Bates No. 422.[2]   Since purchasing Plaintiff's loan in January of 1997,

Defendants have assessed thousands of dollars to Plaintiff's account for additional late

fees, property valuation expenses, certified mail costs, foreclosure expenses/costs

(including attorney's fees), bankruptcy fees/expenses, property inspection fees, title

report fees, optional products, and returned check fees.  From January 1997 to present,

Defendants have improperly collected thousands of dollars from Plaintiff's monthly

mortgage payments and applied such payments to these fees – and to reduce the

"interest arrearage balance" – instead of reducing her principal and interest, as they were

contractually obligated to do.

On June 19, 2009 Defendants filed a foreclosure suit against Plaintiff based upon

---

[2]      Defendants' documents provided in response to Plaintiff's written discovery
requests were Bates stamped and can be filed with the Court at the Court's request.

an outstanding principal balance of ***only*** $836.24.  See Defendants' Complaint filed in

Campbell County Circuit Court, Civil Action No. 09-CI-00901.  Plaintiff then filed the

instant bankruptcy case and in response Defendants filed their Proof of Claim (PACER

Claim # 14).  Defendants' Proof of Claim demands $836.24 in outstanding principal, as

well as $19.11 in interest, and approximately $4,821.51 in other fees they claim are

outstanding.  See PACER Claim # 14 at p. 2.  In response, Plaintiff filed her Complaint

and Objection to Secured Claim (PACER Docket # 1) on December 7, 2009, and two

weeks later on December 21, 2010 Plaintiff served written discovery upon the

Defendants.

Throughout the protracted discovery process in this case, Plaintiff has expended

much energy attempting to obtain from Defendants complete responses to her discovery

requests as required by the Civil Rules. Specifically Plaintiff has requested and

Defendants have failed to produce: (i) documentation and information confirming  the

amounts due and owing at the time Defendants acquired the loan; (ii) documentation and

information regarding the fees that were charged after Defendants acquired the loan -

including the purpose of the fees, itemized breakdown of the fees, the contractual or

other legal basis entitling Defendants to assess and  collect the fees from Plaintiff's

monthly mortgage payments; and (iii) documentation and information regarding the

servicing software used by Defendants to service Plaintiff's account – including any

software used to send out billing notices or other collection notices to Plaintiff, credit

Plaintiff's payments, and schedule, assess, and collect fees.

After her exhaustive efforts to resolve the discovery disputes without the Court's

5

intervention proved futile, Plaintiff filed a very detailed Motion to Compel on April 5, 2010, along with her Memorandum in Support, Attorneys' Certification/Affidavit, and Exhibits including several detailed letters from Plaintiff's counsel to Defendants' counsel (PACER Docket # 19 and #19-1 through # 19-5).  In response, on April 16, 2010, counsel for both parties engaged in a lengthy telephonic conference, going through Plaintiff's Memorandum in Support of her Motion to Compel in its entirety.  After a meeting of the minds was reached, the parties signed an Agreed Order filed that same day (PACER Docket # 21).  The Court signed and entered the Agreed Order on April 19, 2010 (PACER Docket # 22).

Despite the Agreed Order, and after more than 140 days have elapsed since being served Plaintiff's discovery requests, Defendants have failed to comply with their discovery obligations and are now in violation of the Agreed Order entered by this Court. Defendants have failed to provide the agreed upon discovery by the Order's deadline of April 26, 2010.

## III.    ARGUMENT

### A.    DEFENDANTS HAVE FAILED TO COMPLY WITH THE APRIL 19, 2010 COURT ORDER, HAVE FAILED TO COMPLY WITH F.R.C.P. 26 (e), AND HAVE SPOLIATED EVIDENCE

#### 1.  DEFENDANTS HAVE FAILED TO COMPLY WITH THE APRIL 19, 2010 COURT ORDER AND HAVE FAILED TO COMPLY WITH F.R.C.P. 26(e)

The April 19, 2010 Agreed Order plainly set forth the three obligations of Defendants.  First, the Defendants were ordered to file supplemental responses to all of the interrogatories and requests for production enumerated in Plaintiff's Motion to

6

Compel by April 26, 2010.  Second, Defendants were ordered to provide Plaintiff with all documents responsive to the requests enumerated in Plaintiff's Motion to Compel by April 26, 2010, and if the Defendants were unable to produce certain documents by the deadline set out in the Order, Defendants would alternatively provide Plaintiff a timeline by which those documents would be produced.  Third, as to any documents (including electronic files) that were available at one time, but are no longer in existence or have otherwise been lost or destroyed, Defendants were ordered to provide Plaintiff the date the documents were discarded or otherwise disposed of and the reason each such document was discarded or disposed of by April 26, 2010.  (PACER Docket # 22).

Rule 26(e)(1) also requires Defendants to supplement disclosures and responses in a timely manner upon Plaintiff's notice that material aspects of their disclosures and responses were incomplete – and as ordered by the Court.

Therefore, the only dispositive questions before this Court are whether Defendants answered Plaintiff's discovery as required under the Agreed Order and the Federal Rules by providing responsive answers and making responsive disclosures, or by providing a timeline for which Defendants would provide such answers and disclosures, or by otherwise providing an explanation for the failure to produce documents.  Any failure of Defendants to fully answer or make a complete disclosure is in violation of the Order and the Rules and is subject to appropriate sanctions.

Defendants have failed to comply with the Order as follows:

i.    **Production Request  No. 9 (Exhibit B at p. 4)**

Plaintiff specifically requested Defendants to produce any documents that record,

7

reflect, evidence or refer to any master servicing and collection software platform referred to in Plaintiff's Interrogatories Nos. 18, 19, and 20. This information certainly existed at one time and Defendants must have had possession of this information or Defendants would have been unable to initially train its staff or to continue to train new employees, etc. During the aforementioned conference call on April 16, 2010, Defendants' counsel stated that no such materials existed. However, in its supplemented discovery response, Defendants now have reverted back to their previous boilerplate objection based on relevance and their unfounded objection based upon "proprietary information/trade secret". (Exhibit B at p. 4.)

Plaintiff has gone through great efforts to repeatedly advise Defendants that boilerplate objections are improper and there is no such absolute privilege or protection with regard to proprietary matters under the Federal Rules (and that Defendants must instead provide the disclosures or seek a consensual protective order or an order from the Court limiting disclosure). See Plaintiff's Memorandum in Support of her Motion to Compel at PACER Docket # 19-1 pp. 19-20. In choosing to improperly object and unilaterally withhold such information without submitting a protective order, Defendants are now well beyond the time period for which they can submit such an order and have failed to make the ordered disclosures. *See* MOORE'S FEDERAL PRACTICE 3d § 26.102[2] (citing at least ten cases in support of the proposition that a motion for a protective order is timely if it is made *prior* to the date set for producing the discovery, though a party's failure may be excused if there was no opportunity to move for the order before discovery was due).

8

### ii.   Production Request No. 13 (Exhibit B at p. 15)

Plaintiff specifically requested Defendants to produce all documents that record, reflect, evidence, or refer to any judicial or administrative proceeding in which claims were raised against Ocwen by a public or private consumer protection agency, borrower, etc, in Campbell County, Kentucky, for the limited time period since Defendants have serviced Plaintiff's loan.  Despite the Order, Defendants have answered, "Defendants will provide the requested information."  Defendants have not provided any such information and so Defendants have failed to make the ordered disclosures.

### iii.   Interrogatory No. 3 (Exhibit A at p. 2), and
### Production Request Nos. 1 and 2 (Exhibit B at pp. 1 - 2)

Plaintiff's Production Request No. 1 specifically requested all documents executed at loan closing.  These documents existed at one time and Defendants must have had possession of these documents or Defendants could not have known the particular terms of the loan by which their servicing would be bound.  Further, Defendants were obligated under the trust's Pooling and Servicing Agreement to maintain such documents.  Bates Nos. 299-230.  However, Defendants merely state in their response that, "Research continues, and Defendants will supplement this response if additional documents are later discovered."  (Exhibit B at p. 2.)  No supplemental response has been provided by Defendants for this Production Request as ordered by the Court and required by the Rules.

Plaintiff's Interrogatory No. 3 and Production Request No. 2 specifically requested Defendants to provide an itemized statement of Plaintiff's payments since the origination

of Plaintiff's loan, including any prior servicing history or "life of loan" transactional history.   This information also existed at one time and Defendants must have had possession of this information.   Otherwise, Defendants could not have known the balances it claims were due and owing at the time they began servicing Plaintiff's loan, i.e., information necessary to establish their Proof of Claim.   Despite this, Defendants' answer to the Plaintiff's Interrogatory No. 3 is simply that, "Defendants have requested the prior servicing history and will provide it by supplemental response if it becomes available."  (Exhibit A at p. 2.)  Defendants' response regarding Production Request No. 2 is merely, "Defendants do not believe they were provided a detailed transaction history for any time prior to when LaSalle became the holder and Ocwen became the servicer. Defendants will amend or supplement this response if a prior history is located or obtained."   (Exhibit B at p. 2.)   No supplemental response has been provided by Defendants for either this Interrogatory or Production Request as ordered by the Court and required by the Rules.  It is implausible that these documents were not provided to Defendants, as they provide the only legal basis Defendants have for charging Plaintiff the sums they have charged her in the course of the loan.

Further, Defendants have failed to provide a timeline in which they will produce such disclosures and have otherwise failed to explain the date and reason for the disposition of any such disclosures as ordered.

### iv.    Interrogatory No. 4 (Exhibit A at p. 2), and Production Request No. 4 (Exhibit B at pp. 3-4)

Plaintiff's specifically requested Defendants to describe in full and complete detail

any amount charged to Plaintiff's account for attorneys' fees since Defendants began servicing the loan, including an itemized breakdown of the purpose and amount of each fee and the date of service for which the fee was charged.  Plaintiff's further requested Defendants to provide every document that records, reflects, evidences, or refers to attorneys' fees charged to Plaintiff's loan including invoices, checks, wire statements, scope of service, time spent in performing service, etc.  Obviously this information existed at one time and is in the possession of Defendants.

However, despite Plaintiff's Motion to Compel describing in detail the insufficiency of Defendants answers as well as the parties' subsequent April 16, 2010 conference call, Defendants have failed to provide this responsive information as ordered.  Defendants' response states that "a portion" of the information sought is available in Bates Nos. 121 to 246 and Bates Nos. 509-544. However, Bates Nos. 121-246 provide only the full amount of the fees charged to Plaintiff's account, when the fees were charged to Plaintiff's account, and to whom the fees were paid.  Bates Nos. 509-544 are computer screen shots that provide the identical information with no indication that the screen shots are in fact connected to Plaintiff's account number.   These documents are responsive to only three parts of a very detailed question.  Otherwise, Defendants state, "This response may be supplemented at a later date."  (Exhibit B at pp. 3-4.)  No supplementation has been provided by Defendants as ordered and required by the Rules.

Defendants have failed to answer in that they have failed to provide a complete response as ordered.  Further Defendants have failed to provide a timeline in which they

11

will produce such disclosures and have otherwise failed to explain the date and reason for the disposition of any underlying documents as ordered.

       **v.      Interrogatory Nos. 6, 7, 8, and 9 (Exhibit A at pp. 3 - 4)**

Plaintiff's specifically requested Defendants to describe in full and complete detail any amount charged to Plaintiff's account for property preservation or property inspection fees including the reason for any such inspection, the itemized breakdown of the charge, the actual cost incurred by Ocwen, the date each such inspection was conducted, the entity to whom payment was made, if there is any business affiliation between Ocwen and the paid entity, a complete description of the service provided, and how any such reports are stored and reviewed by Ocwen, etc.   In her Production Request No. 5, Plaintiff further requested Defendants to provide every document that records, reflects, evidences, or refers to property inspection or preservation fees charged to Plaintiff's loan including invoices, checks, wire statements, scope of service, time spent in performing service, actual cost to Ocwen, etc.   (Exhibit B at p. 3.)

Obviously this information existed at one time and is in the possession of Defendants.   Defendants have failed to provide responsive information as ordered by the Court.   Defendants' responses only address "property inspection charges" and only provide responsive information for one "property inspection charge in the amount of $10.50."   For such charge, Defendants state that "Copies of inspection reports have been requested from Safeguard and will be provided to respond to the remaining portions of the interrogatory."   However, no such documents have been provided by Defendants.

Defendants further state that, "No amount has been charged for property preservation." Defendants' sworn statement is patently false. Defendants' own documents reflect information regarding the approximate $1,566 in "property preservation" fees Defendants charged to Plaintiff's account – representing 13 separate inspections – found within their own account history and fees ledger (Bates Nos. 233-235), comment log (Bates Nos. 126-216), their single inspection report found at Bates No. 64, Proof of Claim (PACER Claim # 14 at p. 2), multiple billing statements (Bates Nos. 431-437), and pay off statements and reinstatement notices (Bates Nos. 391-399). However, save for the single report at Bates No. 64, none of these documents are responsive to the interrogatory request that Defendants were ordered to answer with regard to "property preservation fees." Defendants' documents only reveal the total charge to Plaintiff's account for property preservation fees and the date the charges were assessed to Plaintiff's account. The only additional information the report provides is the name of the vendor and the inspection date.

Defendants have failed to answer in that they have failed to provide a complete response as ordered by the Court, have failed to provide a timeline in which they will produce such disclosures, and have otherwise failed to explain the date and reason for the disposition of any underlying documents as ordered. Further, Defendants have provided an untruthful answer and completely failed to make any disclosure with regard to "property preservation fees" charged to Plaintiff's account.

13

### vi.    Interrogatory No. 10 (Exhibit A at p. 2), and
### Production Request No. 5 (Exhibit B at p. 3)

Plaintiff's specifically requested Defendants to describe in full and complete detail any amount charged to Plaintiff's account for any other fees – other than attorney's fees - since Ocwen began servicing the loan, including an itemized breakdown of the purpose and amount of each fee and the date of service for which the fee was charged.  Plaintiff further requested Defendants to provide every document that records, reflects, evidences, or refers to any fees charged to Plaintiff's loan including invoices, checks, wire statements, scope of service, time spent in performing service, etc.  Obviously this information existed at one time and is in the possession of Defendants.

Defendants have failed to provide responsive information as required by the Court's Agreed Order and the Rules.  Defendants' response to the production request states that "the requested information is contained in the transaction history, comment log and other documents served in response…" at Bates Nos. 121 to 246 and Bates Nos. 412-428, 431-438, and 442-544.  Bates Nos. 121-246 only provides the full amount of the fee charged to Plaintiff's account, when the fee was charged to Plaintiff's account, and to whom the fee was paid.  Bates Nos. 412-428 and 431-438 provides the identical information.  Bates Nos. 442-544 are wholly non-responsive in that it is proof of escrow disbursements (with Bates Nos. 456-479 being completely unreadable).   Otherwise, Defendants' answer to the interrogatory states, "Information regarding the purpose of each fee, date of service and recipient of each payment will be provided by disclosure of documents.  Page numbers of responsive material include _____ through _____ [*sic*]."

14

No page numbers have ever been provided to Plaintiff nor has any supplementation been provided by Defendants as ordered by the Court and required by the Rules.

Defendants have failed to answer in that they have failed to provide a complete response as ordered, have failed to provide a timeline in which they will produce such disclosures, and have otherwise failed to explain the date and reason for the disposition of any such underlying documents as ordered.

### vii.    Interrogatory No. 13 (Exhibit A at p. 5)

Plaintiff specifically requested Defendants to describe in detail the contractual basis for charging the "interest arrearage balance" they claim was due and owing when they purchased Plaintiff's loan, and also requested that Defendants cite the specific terms of the contract upon which they rely.  This information must have existed at one time if the interest arrearage balance is in fact a legitimate charge.  If so, Defendants must have had possession of this information or Defendants could not have known the interest arrearage balance it claims was due and owing at the time they began servicing Plaintiff's loan.  See Defendants' Answer to Interrogatory No.12, Exhibit A at p. 5. Defendants responded that, "The loan was on a HUD forbearance agreement with the prior servicer, and borrower was not making contractual payment sufficient to pay interest as it accrued."  However, Defendants did not cite the contractual provision as requested nor did they provide the agreement at issue (either in response to this Interrogatory or Production Request No. 3, to which Defendants provided other forbearance agreements in response).   The directions for the Interrogatories served to Defendants specifically state that, "A request in any of the enclosed interrogatories to

"identify" a document is a request to attach said document to answer to these interrogatories…".  Also, Production Request No. 15 requested all documents identified in Defendants' answer to Interrogatories.

Defendants have failed to answer in that they have failed to provide a complete response as ordered by the Court.

### viii.    Interrogatory Nos. 22, 23, and 24 (Exhibit A at p. 8), and Production Request No. 14 (Exhibit B at p. 5)

Plaintiff specifically requested that Defendants provide information concerning, including the identification of, any expert witness, any person with knowledge, and any documents Defendants anticipate introducing as evidence.  Defendants did not identify any witness.  Defendants identified only one person with knowledge of the facts at issue – adding that "Ocwen will supplement this response with additional names as they are revealed through further investigation."  Defendants reserved the right to use any documents provided by either party in discovery, again adding language that they will supplement or amend if further documents become available.

Defendants have failed to answer in that they have failed to provide a complete response as ordered, have failed to provide a timeline in which they will produce such disclosures, and have otherwise failed to explain the date and reason for the disposition of any such underlying documents as ordered by the Court.

### ix.    Interrogatory No. 25 (Exhibit A at p. 8)

Plaintiff specifically requested that for any documents that were, but are no longer in Defendants' possession or subject to Defendants' control, Defendants state the date

16

and description of the document, the date of its disposition, the manner of disposition, and the reason for each such disposition.  As described above, Defendants failed to provide this information for a single discovery request, although required to do so by the Agreed Order.

### x.      Production Request Nos. 3 and 7 (Exhibit B at pp. 2-3)

Plaintiff specifically requested Defendants to produce documents relating to communications between Defendants and Plaintiff, between or among Defendants, or between Defendants and any other third party.  Again, this information certainly existed at one time and Defendants must have had possession of this information.   Defendants provided some information responsive to communications between Defendants and Plaintiff, and between or among Defendants.  However, Defendants have provided no communications – such as contracts, retainers, etc., – between themselves and third parties whose purported fees were charged to Plaintiff's account.  Defendants again state, "Research continues, and Defendants will supplement this disclosure with additional documents when they are located."  No such supplementation has been provided.

Likewise with Request No. 7, in response to Plaintiff's request for documents relating to Defendants relationship with third party vendor American Security Insurance Company, Defendants state that, "Defendants have no documents responsive to the request."  Defendants failed to explain whether any such documents ever existed, as they surely did, and why they are unavailable.

Defendants have failed to answer in that they have failed to provide a complete

17

response as ordered, have failed to provide a timeline in which they will produce such disclosures, and have otherwise failed to explain the date and reason for the disposition of any such underlying documents as ordered by the Court.

### xi.    Production Request No. 10 (Exhibit B at p. 4)

Plaintiff specifically requested Defendants to produce documents relating to the securitization and creation of the trust of which Plaintiff's loan is a part of the underlying collateral, including the Prospectus and Prospectus Supplement, Pooling and Servicing Agreement, Master Documents Custodial Agreement, and all Confirmation Reports by the Master Document Custodian.   Defendants did provide the Pooling and Servicing Agreement after Plaintiff demanded supplementation. However, the Pooling and Servicing Agreement lacks critical exhibits and loan schedules that were incorporated into that Agreement.  Furthermore, as to the other securitization documents, Defendants state, "Ocwen did not have possession of any of the specific documents listed in the request."  This is not plausible, as Defendants – at least Bank of America as Successor Trustee – are required to maintain such documents as the document custodian.  See Bates No. 269.

Defendants have failed to answer in that they have failed to provide a complete response as ordered, have failed to provide a timeline in which they will produce such disclosures, and have otherwise failed to explain the date and reason for the disposition of any such underlying documents as ordered.

### 2.  DEFENDANTS HAVE SPOLIATED EVIDENCE

Defendants offer no explanation as to how the documents essential to their

18

operation of business and their servicing of Plaintiff's account, including prior servicing records, trust documents, and binding forbearance agreements, could be unavailable. While Defendants admit many of these records were used to initially input Plaintiff's loan information into Defendants' servicing software by way of data tapes, even those electronic records have not been produced.   See Defendants' Answer to Plaintiff's Interrogatory No. 19 (Exhibit A at p. 7).   Moreover, Defendants were required to maintain such records as the document custodian for the trust.   See Bates Nos. 299-230.

Defendants bought Plaintiff's loan when it was delinquent, and so Defendants were aware of the possibility of pending foreclosure litigation from the very moment they purchased Plaintiff's loan.   Still, Defendants have offered no explanation for the unavailability of these critical documents.   Simply put, there is no explanation for the unavailability of the very records Defendants have relied upon for both foreclosure actions they initiated (both filed in Campbell County Circuit Court on October 29, 2004 and June 19, 2009 respectively; see PACER Docket # 1 at pp. 9-11, ¶ 29-40) as well as their Proof of Claim (PACER Claim # 14).   The Sixth Circuit has held that "[a]s a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v Fed. Express, Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).   Where the duty to preserve is breached, a district court may exercise its authority and issue sanctions.   *Id. Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d at 546, 553 n.1 (6th Cir. 1994).

After nearly 140 days, Defendants have not found the requested documents that were once in their possession.  It can be inferred that these documents no longer exist. It was Defendants burden to prove that there was a legitimate reason for any loss or destruction of the requested documents, and in fact Defendants agreed to provide so much and were likewise ordered to provide the same.    Defendants have provided no plausible explanation, much less justification for their action.

**B.    THE COURT SHOULD ISSUE SANCTIONS FOR DEFENDANTS' CONDUCT INCLUDING STRIKING DEFENDANTS' DEFENSES, PROHIBITING DEFENDANTS FROM SUPPORTING OR OPPOSING DESIGNATED CLAIMS AND DEFENSES, AND PROHIBITING DEFENDANTS FROM INTRODUCING DESIGNATED MATTERS INTO EVIDENCE**

Rule 37(b)(2) provides this Court with discretion to impose appropriate sanctions when a party has failed to comply with a court order regarding discovery obligations:

**(2)** *Sanctions in the District Where the Action Is Pending.*

**(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)

The Sixth Circuit has delineated the factors to consider in deciding whether dismissal the harshest of sanctions are appropriate following discovery abuses:

> Federal Rule of Civil Procedure 37(b)(2)(C) allows district judges to sanction discovery abusers. A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment. Fed.R.Civ.P. 37(b)(2)(B). When a district judge uses his strongest weapon, we look to four factors to see if he abused his discretion. *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1073 (6th Cir.1990). They are: 1) whether the disobedient party acted in willful bad faith; 2) whether the opposing party suffered prejudice; 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and 4) whether less drastic sanctions were imposed or considered. *Ibid.* In this case, all four factors weigh strongly in the Grange plaintiffs' favor, so we have no need to balance them against each other.

*Grange Mut. Cas. Co. v. Mack,* 270 Fed.Appx. 372, 376, 2008 WL 744723, **4 (6th Cir. 2008).  In *Grange* the Court affirmed the District Court's entry of default judgment against the defendant for willful failure to produce documents.  See also, *Southern Wabash Communications, Ltd. v. Union County Broadcasting Co., Inc.* 69 Fed.Appx. 285, 290, 2003 WL 21525112, **4 (6th Cir. 2003).

Given the extraordinary length of the delay Defendants have exhibited in producing any substantive discovery responses, the tight time frames of this Court's Trial Order, and in light of the critical information that they have simply failed to provide without explanation as described above, striking defenses and/or entering a default would be entirely consistent with the considerations set out in *Mack.*  Defendants' "willfulness" and "bad faith" are evidenced by their repeated failure to respond to

Plaintiff's requests to resolve these disputed discovery matters and their failure comply with a discovery order to which they agreed.

The prejudice to Plaintiff is apparent in that the failure to respond to the discovery requests outlined above prevents Plaintiff from relying upon business records that would otherwise substantiate her claims, and makes it virtually impossible for Plaintiff to test the defenses offered by the Defendants.   Furthermore, Defendants' conduct has the possibility of disrupting the Court's trial schedule.   Plaintiff has been unfairly prejudiced because her time and resources have been almost entirely expended on this discovery dispute.   Despite Plaintiff's best efforts toward expedient resolution of such matters, Defendants stubbornness has so far left Plaintiff unable to adequately prepare for depositions and her expert witness has likewise been unable to prepare her report.

Plaintiff seeks only to even the evidentiary playing field through the granting of sanctions that logically flow from the consequences of Defendants' repeated refusal to comply with the specified discovery requirements:  that Defendants' defenses be stricken and that Defendants be prohibited from using the information and documents they have failed to provide as evidence in any subsequent motion, hearing, or at trial.

Rule 37(c) expressly supports this conclusion by allowing for the "automatic" exclusion of information and documents Defendants have failed to disclose and supplement, even absent court order.   See, "Amendments to Federal Rules of Civil Procedure" (1993), Committee Notes to Amendments to FRCP Rule 37(c), 146 F.R.D. 401, 691.  See also *Vance, by and Through Hammons v. U.S.,* 182 F.3d 920, 1999 WL 455435 at *3 -*5 (6th Cir. 1999).  The Rule provides:

**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identity of a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure, and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)

In *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357 (6th Cir. 2010), the Court sanctioned the plaintiff under Rule 37(c) by not allowing it to introduce certain damages evidence due to the plaintiff's failure to disclose the damages amount claimed. As the Court stated, "[g]iven these shortfalls in Bessemer's compliance with its discovery obligations, the district court did not abuse its discretion in excluding evidence of lost-profits damages and, because it had no evidence of lost profits left to consider, granting summary judgment to Seaway." *Id.* at 369. The *Bessemer* Court quoted F.R.C.P. 37(c)(1) directly holding that when "a party fails to provide information ... the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* See also *Brainard v. American Skandia Life Insurance Corp.,* 432 F. 3d 655, 664 (6th Cir. 2005) (holding that an expert's disclosure must be supplemented if there are any additions or changes to previously disclosed information or such additions or changes

23

will be excluded); *Taylor v. Teco Barge Line, Inc.,* 517 F.3d 372, 378-382 (6th Cir. 2008) (quoting F.R.C.P. 37(c)(1) to support its holding barring an expert witness from testifying as to opinions not previously disclosed).

There is no justification for Defendants' conduct.  Defendants have had over four and a half months to answer Plaintiff's discovery and to supplement their responses or otherwise provide some justification for being unable to do so.  Instead, in contempt of the agreed upon Court Order and in violation of the Rules, Defendants have declined to provide any justification whatsoever.  Defendants' inexplicable conduct has been unduly prejudicial and harmful to Plaintiff as outlined above.

Finally, it is within a "district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009).  The Court in *Adkins* stated that a proper sanction for spoliation "should serve both fairness and punitive functions." *Id.* at 652.  *See Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995) (observing that a proper sanction will serve the "purpose[s] of leveling the evidentiary playing field and ... sanctioning the improper conduct"). *Adkins* concluded that, based on the continuum of fault for spoliation ranging from innocence through degrees of negligence to intentional acts, "a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment*,* or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins*, 554 F.3d at 652-53; *see also Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d 546, 553 n.1 (6th Cir. 1994) (stating that "summary judgment may be granted pursuant to Rule 56 . . . if the district court determines that the

24

[non-spoliating party] is entitled to judgment as a matter of law because the [spoliating party] is unable, due to the unavailability of the evidence and the negative inferences, to offer evidence sufficient to support its case.").

Defendants should be precluded from benefitting from the unexplained loss or destruction of documents critical to this litigation.  Absent sanctions, Defendants will be permitted to present defenses, which can no longer be tested by a full review of relevant records.  The law in this Circuit requires Defendants to be appropriately sanctioned in a manner commensurate with the egregious nature of their actions, such that Plaintiff's claims will not fail or be unduly prejudiced by Defendants' misconduct.  At a minimum, the Court should deny Defendants the right to pursue any defense that could be tested or challenged by the purported unavailable business records.

## IV.   CONCLUSION

Plaintiff has demonstrated above that she is entitled to sanctions including that Defendants' defenses be stricken and that Defendants be prohibited from using the information and documents they have failed to provide as evidence on a motion, at a hearing, or at trial.

Respectfully submitted,

/s/ J. Eileen Zell
J. EILEEN ZELL (#90398)
/s/ James P. McHugh (#85090)
JAMES P. MCHUGH
ATTORNEYS FOR PLAINTIFF
Legal Aid of the Bluegrass
104 East 7th Street
Covington, Kentucky 41011
Ph: 859-431-8200 ext 1221

/s/ Michael O'Hara
MICHAEL O'HARA (#52530)
ATTORNEY FOR PLAINTIFF
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Crestview Hills Mall Road, Suite 201
Covington, Kentucky 41017-0411
Ph: 859-331-2000

## CERTIFICATION OF SERVICE

On May 7, 2010, I electronically filed this certification and memorandum with attachments through the ECF system, which will send a notice of electronic filing and any order or judgment the Plaintiff proposes in connection therewith to:

Christopher M. Hill, Esq.                    J. Eileen Zell, Esq.
chrish@hillslaw.com; tinariggs@hillslaw.com    ezell@lablaw.org

Michael O'Hara, Esq.                         James P. McHugh, Esq.
mohara@ortlaw.com; jenniferb@ortlaw.com        jmchugh@LABLaw.org

By:    /s/ J. Eileen Zell
       J. Eileen Zell
       Legal Aid of the Bluegrass

26